## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ADRIANO KRUEL BUDRI,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **Civil Action No. 3:19-CV-0409-N-BH** |
| | § | |
| **FIRSTFLEET INC., et. al,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is the *Defendants' Motion to Dismiss Plaintiff's Final Amended Complaint for Damages*, filed June 28, 2019 (doc. 60). Based on the relevant filings and applicable law, the motion should be **GRANTED**, and the plaintiff's remaining claim should be dismissed *sua sponte*.

### I. BACKGROUND

This case involves a dispute arising out of multiple alleged employment violations that occurred during and after the plaintiff's term of employment.

#### A.    <u>Factual Background</u>

Adriano Kruel Budri (Plaintiff) was employed by FirstFleet, Inc. (Employer) as a non-exempt, full-time commercial truck driver from January 25, 2017, until February 21, 2017. (doc. 57 at 4, 9.)[2] His "job was to pick up and deliver pre[-]loaded semitrailer assignments" only within Texas. (*Id*. at 10.) He did not drive across state lines, or carry or deliver goods that originated outside of Texas. (*Id*. at 9-10.) All of his duties were performed in intrastate and local commerce solely within Texas. (*Id*.) "Plaintiff did not receive a hard[]copy of the [e]mployee [h]andbook on

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

his first day despite" requesting the handbook from Daniel Matthew Humphreys (Supervisor); he received it only "after his wrongful and retaliatory termination" on February 21, 2017. (*Id*. at 13-15.) Because he did not receive the handbook while he was employed, he and Supervisor had frequent communication issues. (*Id*. at 14.)

### 1. *Plaintiff's Termination*

Plaintiff alleges that during the majority of his employment, he was "illegally enticed and induced . . . to violate the Texas Public Policy and commercial motor safety regulations," but he refused and reported the violations to Employer's safety director. (*Id*. at 6.) After that, Supervisor began closely monitoring him using an electronic logging device, and harassing him by calling him daily to force him to frequently stop his truck to answer the phone in a safe and legal location. (*Id*. at 6-7.) One day, Supervisor called his cell phone "approximately 20 times within 7 hours of working activity . . . ." (*Id*. at 7.)

According to Plaintiff, "[t]he events leading up to [his] wrongful and retaliatory discharge occurred on February 17, 2017," when he refused Supervisor's demand to park his commercial truck "in front of the shipper's location for a partial flat tire repair" because the location was not safe, and it was "completely illegal to park any vehicle, at any time[,] in that area under the Texas Transportation Code." (*Id*. at 7.) Plaintiff subsequently drove to a truck stop "to park the truck in a legal and safe place to repair [the] flat tire." (*Id*. at 7-8.) On February 21, 2017, Plaintiff notified Supervisor that he had contacted Employer's safety director "to raise some safety issues," and five hours later, Supervisor informed Plaintiff of his termination. (*Id*. at 8.) On March 7, 2017, Plaintiff filed an internal appeal letter in accordance with Employer's company policy. (*Id*. at 15-16.) Although he filed this appeal, David R. Beeny (Vice President), had not responded to inform

"Plaintiff of his decision of the termination of employment . . . ."  (*Id*. at 16.)

On March 20, 2017, Plaintiff filed a complaint with the United States Department of Labor's (DOL) Occupational Safety and Health Administration (OSHA), alleging that Employer violated the Surface Transportation Assistance Act (STAA) "when it terminated his employment in retaliation for raising safety concerns." *See Budri v. Firstfleet, Inc.*, No. 18-025, 2018 WL 6978226, at *1 (U.S. Dep't of Labor Admin. Rev. Bd. June 19, 2018).  After reviewing his complaint, an Administrative Law Judge (ALJ) dismissed his claim because he "failed to present evidence of specific facts that, if true, would allow a reasonable fact-finder to find in his favor on the issue of causation." *Id*.  Plaintiff then petitioned for review before DOL's Administrative Review Board (ARB), and the ARB summarily affirmed the ALJ's decision, finding that Plaintiff failed "to present any evidence that his protected activities contributed to the termination decision." *See id*.  Plaintiff then appealed to the Fifth Circuit.  *See Budri v. Admin. Review Bd., United States Dep't of Labor*, 764 F. App'x 431, 431 (5th Cir. 2019) (per curiam).  The Fifth Circuit noted the ARB's finding that Plaintiff committed "a series of errors during his only month of employment," and "[h]is termination took place after those mistakes and not directly after" any protected activity recognized by the ARB. *Id*. at 432.  It ultimately agreed with the ARB that "there [was] no genuine dispute of material fact as to the element of causation" on Plaintiff's complaint.  *Id*. at 433.  Plaintiff appealed the Fifth Circuit's decision to the United States Supreme Court, and that appeal remains pending.  *See id*., *petition for cert. filed*, 2019 WL 3889935 (U.S. July 15, 2019) (No. 19-198).

### 2.    *Post-termination Employment Reference*

On June 12, 2017, Plaintiff received a copy of an employment reference prepared by Laurie Brooks (Recruiter) that was sent to a private consumer reporting agency specializing in trucking

employment references.  (*Id.* at 12-13.)  According to him, this reference was illegal and fraudulent because it contained "negative, disparaging, and unfavorable information towards Plaintiff."  (*Id.* at 13.)  Plaintiff also alleges that Employer created a forged electronic signature using Docusign software, and that it was used to make "multiple copies and pastes in electronic employment document forms . . . including in one W4-IRS [f]orm forged for the fiscal year of 2016."  (*Id.* at 19-20.)[3]  He contends that his forged signature was also utilized in signing an acknowledgment form verifying receipt of the employee handbook.  (*Id.* at 20.)  "Plaintiff requested a consumer investigation into [the employment] reference," but Employer "has maintained willfully its derogatory account of Plaintiff based on its own fraudulent, forged acknowledgment form, consent form, and receipt of employee handbook."  (*Id.* at 13.)  He alleges that this is part of a conspiracy to prevent him from pursuing positions with competing trucking companies.  (*Id.*)  Plaintiff appears to allege that he "learned that [Supervisor] had conspired with [two other] corporate employees against him on" July 17, 2017.  (*Id.* at 8.)

On January 23, 2018, Plaintiff filed a complaint with OSHA under the STAA regarding the allegedly illegal and fraudulent employment reference he received on June 12, 2017.  (doc. 62-2 at 3.)  He alleged that on January 15, 2018, he "discovered" that the employment reference remained unchanged even after he initiated an investigation into the reference.  (*Id.* at 4.)  An ALJ reviewed his claim and found that Plaintiff knew of the allegedly negative and disparaging employment reference on June 12, 2017, because that was the date he initially received it.  (*Id.* at 5.)  The ALJ held that because his complaint was not filed within 180 days from the time he discovered the

---

[3] He appears to allege that the forged signature was created on January 25, 2017, the date he began working for Employer.  (*See* doc. 57 at 19-20.)

4

alleged violation, and there was no continuous violation, Plaintiff's OSHA complaint was subject to dismissal as untimely. (*Id*.) On June 27, 2018, Plaintiff filed a petition for review with DOL's ARB. *See Budri v. Firstfleet, Inc.*, No. 2018-0055, 2019 WL 3780911, at *1 (U.S. Dep't of Labor Admin. Rev. Bd. July 30, 2019). Before the ARB issued a final decision, Plaintiff filed his action in this Court. *Id*. On March 25, 2019, before learning of Plaintiff's filing in this Court, the ARB "issued a Final Decision and Order affirming the ALJ's decision." *Id*. The ARB learned of Plaintiff's filing in this Court on July 24, 2019, when Plaintiff "informed the [ARB] via fax of the filing." *Id*. On July 30, 2019, the ARB determined that although Plaintiff failed to provide it notice of the federal court filing as required by regulations, it was evident from the filing that it "no longer ha[d] jurisdiction to adjudicate [his] appeal." *Id*. As a result, it issued an order vacating its March 15, 2019 Final Decision and Order, and dismissing Plaintiff's complaint. *Id*.

### 3. *Plaintiff's Wage Dispute*

Plaintiff alleges that during his "21 working days" with Employer, he "worked 211 . . . service hours . . . and worked [59] overtime hours," but he was "not properly compensated weekly for said hours worked by federal law . . . ." (doc. 57 at 11-12.) On March 26, 2018, he filed a complaint with the Wage Division of the DOL asserting violations of the Fair Labor Standards Act (FLSA), and requesting "civil indemnification for all overtime hours worked . . . and not properly paid," as well as punitive damages. (*Id*.)[4] He claimed that he "was not properly compensated weekly" for the amount of hours he worked for Employer, including overtime. (*Id*. at 12.) Plaintiff then filed a complaint regarding his unpaid overtime wages under the FLSA in the Justice Court, Precinct 1, of Dallas County, on July 30, 2018. (doc. 62-1 at 4.) He similarly alleged that he was

---

[4] What occurred after Plaintiff filed his complaint with the DOL is unclear. (*See* doc. 57 at 11-12.)

not paid overtime wages during his time working as a commercial truck driver for Employer.  (*Id.*)

On February 4, 2019, the justice court held a trial and determined that Plaintiff failed to prove that

he was entitled to recover damages under the FLSA.  (*Id.* at 10.)

## B.    <u>Procedural Background</u>

On February 19, 2019, Plaintiff filed this action against Employer, Vice President,

Supervisor, and Recruiter (collectively, Defendants).  (doc. 3.)  He filed an amended complaint on

February 25, 2019, and then second, third, fourth, and fifth amended complaints without leave or

the consent of the opposing parties.  (docs. 8-11; *see* doc. 14.)  On March 11, 2019, Defendants

moved to dismiss Plaintiff's first amended complaint and to strike his other amended complaints,

and Plaintiff then filed a motion requesting leave to file his sixth amended complaint on March 15,

2019.  (docs. 15; 22.)  On April 3, 2019, Defendants moved for sanctions based on Plaintiff's

conduct in this lawsuit and prior lawsuits.  (doc. 29.)  On April 11, 2019, Plaintiff filed a "Motion

for Clarification," and then he filed two separate motions to "Leave Other Paper," on May 22, 2019

and May 23, 2019.  (docs. 38; 54-55.)

On May 23, 2019, the Court issued an order granting Plaintiff's motion for leave to amend,

deeming Defendants' motion to dismiss moot, and denying Plaintiff's remaining motions as moot.

(doc. 56.)  Defendants' motion for sanctions remained pending.  (*See id.*; doc. 29.)  Plaintiff was

specifically ordered to file one final amended complaint setting forth all of the claims he sought to

assert in this action, and instructed that he would not be granted a further opportunity to amend his

final amended complaint.  (doc. 56 at 5-6.)  He was expressly instructed that he must not file any

additional motions that could be construed as seeking to amend or supplement any of his prior

complaints or his final amended complaint, and warned that if he failed to follow the order, his non-

compliant motions would be unfiled, and he would be subject to sanctions. (*Id*. at 6.)

On June 8, 2019, Plaintiff filed his final amended complaint, asserting claims for wrongful and retaliatory discharge under the STAA and state law; violations of the FLSA, Fair Credit Reporting Act (FCRA), Driver's Privacy Protection Act (DPPA), Computer Fraud and Abuse Act (CFAA), Electronic Communications Privacy Act (ECPA), and Stored Communications Act (SCA); and fraud, intentional interference with contractual obligations, corporate wrongdoing, breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and civil conspiracy under state law. (doc. 57 at 6-22.) He contends that he suffered repeated and willful retaliation on February 17, 2017, February 20, 2017, February 21, 2017, and June 12, 2017, for his "refusal to violate the Texas Common Law for Public Policy, as well as Federal and State Commercial Motor Vehicle Safety Regulations." (*Id*. at 2, 5.) He also claims Defendants "have committed corporate wrongdoing along with reckless indifference" under the instruction and supervision of Vice President, provided fraudulent information to a private consumer reporting agency about him through Recruiter, fabricated fraudulent documents using his forged signature, and failed to pay him his overtime wages he is "due and owing." (*Id*. at 2-3, 5.) He contends that Supervisor's failure to provide him with a copy of the employee handbook was an intentional interference with contractual provisions because company policy required that he provide him with the handbook on his first day, and that Supervisor "committed breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing when he declined to ensure" that Plaintiff received the employee handbook on his first day of employment. (*Id*. at 13, 15-17.) He also claims that Supervisor breached his fiduciary duty when he failed to comply with a provision in the employee handbook requiring Employer to provide roadside assistance to its drivers. (*Id*. at 18-19.)

7

On June 28, 2019, Defendants moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim, Plaintiff responded on June 30, 2019, and Defendants replied on July 1, 2019.  (docs. 60-63; 65.)[5]

## II. RULE 12(b)(1)

Defendants first move to dismiss Plaintiff's claims for wrongful and retaliatory discharge under the STAA; fraud; intentional interference with contractual obligations; deliberate indifference; and violations of the FCRA and DPPA[6] for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  (doc. 61 at 10-11, 13-16.)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S.

---

[5] Plaintiff filed a surreply to Defendants' motion to dismiss.  (doc. 66.)  The local rules require leave of court before filing a surreply.  *See* L.R. 56.7.  Because Plaintiff did not seek leave to file his surreply, "it will not be considered."  *Neely v. Khurana*, No. 3:07-CV-1344-D, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009).  Even if considered, however, the surreply would not change the outcome of the findings or ultimate recommendation.

[6] Although Plaintiff states that he is asserting a claim under the "Driver's Rights Act," this claim may be liberally construed as arising under the DPPA based on the allegations in his complaint that Defendants disclosed information related to his driving record during his employment.  *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010) (stating the elements of a DPPA claim); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam) (recognizing that courts generally liberally construe a *pro se* plaintiff's pleadings).

8

500, 506–07 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

A district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*. Facial attacks are usually made early in the proceedings. *Id*. "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and

"no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, in support of their motion to dismiss, Defendants provide copies of the justice court case file from Plaintiff's prior state court case, an order from an ALJ for the DOL for one of Plaintiff's administrative STAA actions, and excerpts from Employer's employee handbook. (doc. 62-62-3.) Their motion therefore represents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations. "Because Plaintiff does not contest [Defendants'] proffered evidence, however, there are no disputed facts to resolve." *McClain v. Bueschel*, No. 3:09-CV-1721-M, 2010 WL 742452 at *2 (N.D. Tex. Mar. 2, 2010).

## A.      **STAA**

Defendants argue that Plaintiff's claims for wrongful and retaliatory discharge under the STAA should be dismissed because his claims were previously litigated in another administrative proceeding and dismissed, and that dismissal was affirmed by the Fifth Circuit. (doc. 61 at 9-11.)

Under the STAA, an employee may not be discharged, disciplined, or discriminated against based on his filing of a complaint "related to a violation of commercial motor vehicle safety or security regulation," or his refusal to operate a vehicle when its "operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security . . . ." 49 U.S.C. § 31105(a)(1)(A)(i), (a)(1)(B)(i). An employee who is discharged, disciplined, or

discriminated against in violation of the STAA "may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred." *Id.* at § 31105(b)(1). Within 60 days of receiving the complaint, the Secretary of Labor must investigate the complaint to determine if a violation occurred, and if the Secretary reasonably believes that a violation occurred, the Secretary must issue findings and a preliminary order for relief. *Id.* at § 31105(b)(2)(A). The parties "may file objections to the findings or preliminary order, or both, and request a hearing on the record." *Id.* at § 31105(b)(2)(B). After a hearing or if no objections are filed, the Secretary must issue a final order. *Id.* at § 31105(b)(2)(C). If the Secretary fails to issue a final order within 210 days of the filing of the complaint, the employee may bring a lawsuit in the appropriate federal district court. *Id.* at § 31105(c); *see Duke v. Xylem Tree Experts, Inc.*, No. 3:18-CV-00290-JAG, 2018 WL 6809184, at *2 (E.D. Va. Dec. 27, 2018) ("In other words, 'Congress granted district courts subject-matter jurisdiction in 49 U.S.C. § 31105 only in cases in which the Secretary of Labor fails to issue a final decision within 210 days after filing the complaint.'" (citing cases)). If the Secretary issues a timely final order, however, any person adversely affected by the order may only file a petition for review in the appropriate United States Court of Appeals. 49 U.S.C. at § 31105(d). "An order of the Secretary of Labor subject to review under [subsection (d)] is not subject to judicial review in a criminal or other civil proceeding." *Id.*

Here, Plaintiff initially filed a complaint with OSHA alleging that Employer violated the STAA when it discharged him from his position for reporting safety violations. *See Budri*, 2018 WL 6978226, at *1. An ALJ determined that there was no genuine dispute as to any material fact on the causation element of Plaintiff's STAA claim and dismissed his complaint. *Id.* Plaintiff then petitioned for review in front of the DOL's ARB, and the ARB summarily affirmed the ALJ's

decision finding that Plaintiff failed "to present any evidence that his protected activities contributed to the termination decision." *See id*. Following the ARB's determination, Plaintiff petitioned for review directly to the Fifth Circuit as permitted under 49 U.S.C. § 31105(d). *See Budri*, 764 F. App'x at 431. The Fifth Circuit ultimately agreed with the ARB and determined that Employer "was due a favorable decision as a matter of law. *Id*. at 433. Plaintiff then appealed the Fifth Circuit's decision to the Supreme Court, and that appeal remains pending. *See id*., *petition for cert. filed*, 2019 WL 3889935.

In seeking review of the ARB's ultimate determination from the Fifth Circuit, Plaintiff properly complied with the STAA, which require that a person adversely affected by a determination from the Secretary of Labor "file a petition for review in the appropriate United States Court of Appeals." 49 U.S.C. § 31105(d). Because the ARB's order was subject to review under subsection (d), Plaintiff is not permitted to seek judicial review in another civil proceeding. *Id*. He could have only done so if the Secretary had failed to issue a final decision within 210 days of the filing of his initial complaint. *Id*. at § 31105(c); *see Duke*, 2018 WL 6809184, at *2 (stating that district courts only have subject-matter jurisdiction in cases where a final decision is not issued within 210 days of the filing of the complaint); *Rose v. Anderson Hay and Grain Co.*, No. CV-10-055-RMP, 2010 WL 3211948, at *1 (E.D. Wash. Aug. 6, 2010) (same). Because Plaintiff has not shown that the Secretary of Labor "fail[ed] to issue a final decision within 210 days after the filing of the complaint," and he properly sought review in the Fifth Circuit after receiving its final decision, this Court lacks subject-matter jurisdiction over any claims for wrongful and retaliatory discharge under the STAA. *See Duke*, 2018 WL 6809184, at *2 (finding that the court lacked subject-matter jurisdiction where the plaintiff failed to establish that the Secretary of Labor did not issue a timely

final decision).  Accordingly, this claim should be dismissed without prejudice for lack of subject-matter jurisdiction.[7]  *See Rose*, 2010 WL 3211948, at *1 (dismissing STAA claim without prejudice for lack of subject-matter jurisdiction).

## B.    Count IV Employment Reference Claims

Defendants also assert that Plaintiff's claims in Count IV that are based on the allegedly fraudulent employment reference should be dismissed because he previously brought these claims as part of his second STAA claim, and they were ultimately dismissed by the DOL.  (doc. 61 at 13-16.)[8]  They assert that his only avenue for relief is to petition for review to the Fifth Circuit under 49 U.S.C. § 31105(d).  (*Id.*)

As discussed, the Secretary of Labor is required to issue a final decision within 210 days of the filing of a complaint.  *See* 49 U.S.C. § 31105(c).  The complainant may pursue his action in federal court if the Secretary fails to issue a timely decision, but if the decision is timely, he may only seek review in the appropriate United States Court of Appeals.  *Id*. at § 31105(c), (d).  Federal district courts have subject-matter jurisdiction under the STAA "only in cases in which the Secretary of Labor fails to issue a final decision within 210 days" of the filing of the complaint.  *See id*.; *Duke*, 2018 WL 6809184, at *2;  *See Rose*, 2010 WL 3211948, at *1.

On January 23, 2018, Plaintiff filed his complaint with OSHA alleging retaliation under the STAA because "the negative and unfavorable employment information" in the employment

---

[7] Defendants also move to dismiss Plaintiff's claims for wrongful and retaliatory discharge under the STAA based on collateral estoppel.  (doc. 61 at 11-12.)  Because this claim should be dismissed for lack of subject-matter jurisdiction, it is unnecessary to reach their additional grounds for dismissal.

[8] Plaintiff specifically asserts claims for fraud; intentional interference with contractual obligations; deliberate indifference; and violations of the FCRA and DPPA based on the allegedly illegal and fraudulent employment reference. (doc. 57 at 12-13.)

reference "remained on his driving record." (doc. 62-2 at 2-4.) On June 26, 2018, an ALJ for the DOL determined that his claim should be dismissed because it was untimely. (*Id*. at 3-5.) On June 27, 2018, Plaintiff filed a petition for review with the ARB. *See Budri*, 2019 WL 3780911, at *1. On February 19, 2019, before the ARB issued a final decision on review, Plaintiff filed this action. *Id*. The ARB then "issued a Final Decision and Order affirming the ALJ's decision" on March 25, 2019, before it learned that Plaintiff had filed a complaint in federal court. *Id*. On July 24, 2019, Plaintiff "informed the [ARB] via fax of the filing" in federal court. *Id*. On July 30, 2019, the ARB determined that because Plaintiff had filed his complaint in federal court, it "no longer ha[d] jurisdiction to adjudicate [his] appeal." *Id*. As a result, it issued an order vacating its March 15, 2019 Final Decision and Order, and dismissing Plaintiff's complaint. *Id*.

Here, Plaintiff is not asserting a retaliation claim under the STAA based on the allegedly fraudulent employment reference. (*See* doc. 57 at 12-13.) Rather, he appears to allege separate claims for fraud; intentional interference with contractual obligations; deliberate indifference; and violations of the FCRA and DPPA. (*Id*.) The only STAA claim alleged in his complaint is his claim for wrongful and retaliatory discharge, which is addressed in the previous section. (*Id*. at 6-9.) His final amended complaint does not contain any allegations regarding the ALJ's decision on this second STAA claim, and he does not appear to seek review of the ALJ's decision. (*See id*. at 12-13.) Although he asserts claims based on the employment reference, those claims do not appear to arise under the STAA. (*Id*.) Accordingly, Defendants' motion to dismiss these claims on the basis that the Court is without jurisdiction to review timely decisions from the DOL should be denied because the claims differ from his STAA claim in his administrative action, and he does not appear to seek review of the ALJ's decision in that administrative action.

14

To the extent Plaintiff is attempting to assert a retaliation claim under the STAA based on the employment reference in this action, the relevant filings show that he filed his administrative complaint on January 23, 2018, and the ALJ issued a decision within 210 days of its filing.  (*See* docs. 62-2 at 2-5.)  Because the ALJ's final decision was timely, Plaintiff's only avenue of seeking relief from that decision is to pursue his claim in the appropriate United States Court of Appeals.  *See* 49 U.S.C. § 31105(d).  This Court therefore lacks subject-matter jurisdiction to the extent Plaintiff seeks review of the ALJ's timely decision under the STAA, and any claim based on the employment reference under the STAA should be dismissed.  *See Rose*, 2010 WL 3211948, at *1.

### III. RULE 12(b)(6)

Defendants next move to dismiss Plaintiff's remaining claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* doc. 61 at 2-3, 14, 17-25.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof

of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007); *Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008). If "matters

outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents attached to a motion to dismiss or to a response to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch*, 533 F.3d at 293–94 (finding that reliance on documents attached to a response to a motion to dismiss was appropriate where the documents were "sufficiently referenced in the complaint"). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Defendants attached documents with their motion to dismiss, including copies of the case file from Plaintiff's state court case, an order from the DOL's ARB from one of Plaintiff's administrative cases, and excerpts from the employee handbook. (docs. 62-62-3.) Because these documents are referenced in Plaintiff's complaint and central to his claims, they are considered part of the pleadings. *See Collins*, 224 F.3d at 499. Defendants also provide citations to Plaintiff's administrative case that was appealed to the Fifth Circuit, which may be judicially noticed because

17

it is a matter of public record and its contents cannot reasonably be disputed. *See Norris*, 500 F.3d at 461 n.9; *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) (noting that the district court could take judicial notice of a judgment entered in a different case for the limited purpose of taking as true the action of the court in entering the judgment); *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed").   Because these documents are properly considered part of the pleadings, it is unnecessary to convert the motion to dismiss into a motion for summary judgment.

A.     **Statute of Limitations**

Defendants first assert that Plaintiff's claims under the FLSA, FCRA, CFAA, ECPA, and SCA are barred by the applicable statutes of limitations.  (doc. 61 at 9.)

Although limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[ ] on the face of the complaint." *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at \*4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

*1.     FLSA*

Defendants assert that his FLSA claims are barred because he filed his final amended complaint on filed June 8, 2019, more than two years after he was terminated on February 21, 2017. (doc. 61 at 9.)

Under the FLSA, employees may file suit to recover unpaid minimum wages, overtime compensation, and liquidated damages from employers who violate the statute's provisions.  29

18

U.S.C. § 216(b).  The statute of limitations for FLSA claims is two years, unless there is evidence that the alleged violations were willful.  29 U.S.C. § 255(a).  A violation is willful if the employer either  "knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute" *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  A cause of action "begins to accrue at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed."  *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 272 (5th Cir. 1987), *modified on other grounds*, 826 F.2d 2 (5th Cir. 1987).

Here, Plaintiff alleges that during his "21 working days" with Employer, he "worked 211 . . . service hours . . . and worked [59] overtime hours," but he was "not properly compensated weekly for said hours worked by federal law . . . ."  (doc. 57 at 11-12.)  He filed his original complaint in this action asserting his FLSA claims on February 19, 2019.  (*See* doc. 3 at 11-12, 14.)  He then filed his final amended complaint in this action asserting the same FLSA claims on June 8, 2019.  (doc. 57 at 9-12.)  Although Plaintiff's final amended complaint was not filed within the two-year limitations period, his initial complaint was filed within that period and specifically asserted claims under the FLSA.  (*See* docs. 3; 57.)  Accordingly, Defendants' motion to dismiss his FLSA claim on this basis should be denied.

### 2.    *FCRA, CFAA, ECPA, and SCA Claims*

Defendants similarly assert that Plaintiff's claims under the FCRA, CFAA, ECPA, and SCA are also time-barred because he filed his final amended complaint over two years after his termination.  (doc. 61 at 9.)

Claims asserted under the FCRA,[9] CFAA,[10] ECPA,[11] and SCA[12] are all subject to a two-year statute of limitations. *See* 15 U.S.C. § 1681p (FCRA); 18 U.S.C. § 1030(g) (CFAA); 18 U.S.C. § 2520(e) (ECPA); 18 U.S.C. § 2707(f) (SCA). The limitations period for claims under the FCRA is the earlier of two years after the date of discovery by the plaintiff of the violation, or five years after the date on which the violation occurred. 15 U.S.C. § 1681p. The CFAA permits an action to be brought "within 2 years of the date of the act complained of or the date of the discovery of the damage."[13] 18 U.S.C. § 1030(g). Both the ECPA and SCA similarly require that a cause of action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."[14] 18 U.S.C. §§ 2520(e), § 2707(f).

Plaintiff first appears to allege that Employer violated the FCRA, CFAA, ECPA, and SCA on January 25, 2017, by allegedly forging his electronic signature using Docusign software and

---

[9] The FCRA ensures "'fair and accurate credit reporting, promote[s] efficiency in the banking system, and protect[s] consumer privacy.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681(b)).

[10] The CFAA is an anti-hacking statute that prohibits unauthorized access to protected computers for the purposes of obtaining information, causing damage, or perpetrating fraud. 18 U.S.C. § 1030(a)(2), (a)(4), (a)(5).

[11] The ECPA provides a cause of action against a person who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(d); *see also* 18 U.S.C. § 2520(a).

[12] The SCA provides a cause of action against any person who "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system[.]" 18 U.S.C. § 2701(a)(1).

[13] "Damage," for purposes of the statute, means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

[14] The ECPA and the SCA do not require that the injured party actually discover or become aware of the violation for the limitations period to begin. *Brown v. Schleuter*, No. 3:08-CV-1534, 2010 WL 502732, at *2 (W.D. La. Feb. 5, 2010), *aff'd sub nom., Pringle v. Schleuter*, 388 F. App'x 449 (5th Cir. 2010) (addressing commencement of limitations period under § 2520(e)); *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015) (addressing commencement of limitations period under § 2707(f)).

utilizing it to sign electronic documents.  (doc. 57 at 19-20.)  It is unclear from the face of his complaint when he discovered or had a reasonable opportunity to discover these alleged violations, however.  (*See id.*)  Because the facts giving rise to Defendants' statute of limitations defense do not "appear[ ] on the face of the complaint," Plaintiff's FCRA, CFAA, ECPA, and SCA claims based on acts that allegedly occurred on January 25, 2017 are not barred by the applicable statutes of limitations.  *See Simmons*, 2010 WL 2473840, at *4 (citing *Kansa Reinsurance Co.*, 20 F.3d at 1366).

Plaintiff also asserts claims under the FCRA, CFAA, ECPA, and SCA based on the allegedly illegal and fraudulent employment reference that was supplied to a private consumer reporting agency.  (doc. 57 at 12-13, 19-20.)  From the face of his complaint, it is apparent that he discovered any alleged violation based on the employment reference on June 12, 2017, when he received a copy of it.  (*Id.*)  He filed his initial complaint in this action on February 19, 2019, asserting his claim under the FCRA, and subsequently filed his final amended complaint on June 8, 2019 asserting claims under the CFAA, ECPA, and SCA in addition to his FCRA claim.  (*See* docs. 3; 57 at 12-13, 19-20.)  All of these claims were asserted within two years of his discovery of the allegedly fraudulent employment reference, and are therefore not barred by their applicable statutes of limitations.

Because it is not apparent from the face of Plaintiff's complaint when his claims under the FLSA, FCRA, CFAA, ECPA, and SCA arose or they were discovered within their applicable limitations periods, Defendants' motion to dismiss these claims on this basis should be denied.

**B.**    **Collateral Estoppel**

Defendants next move to dismiss Plaintiff's claims under the FLSA as barred by collateral

estoppel because he previously asserted these claims in state court. (doc. 61 at 12-13.)

Collateral estoppel, or issue preclusion, is a preclusive doctrine of res judicata. *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013) (stating that the "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). The preclusive doctrines of res judicata are affirmative defenses that generally "should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 664 n.1 (5th Cir. 2004) (citing *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977)) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."). Nevertheless, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co.*, 20 F.3d at 1366). As with all affirmative defenses, the burden of proving issue preclusion "rests on the party claiming the benefit of the doctrine." *Patterson v. Dean Morris, L.L.P.*, No. 08-5014, 2011 WL 1791235, at *6 (E.D. La. May 6, 2011) (citation omitted); *accord Taylor*, 553 U.S. at 907.

Under the doctrine of collateral estoppel, a federal court must give the decisions of a state court the same preclusive effect they would be given under the law of the state in which the judgment was rendered. *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000); *Boundy v. Dolenz*, No. Civ.A. 3:96-CV-03010G, 2002 WL 31415998, at *7 (N.D. Tex. Oct. 21, 2002) ("This court 'must give to a state-court judgment the same preclusive effect as would be given that

judgment under the law of the State in which the judgment was rendered.'").  Plaintiff previously pursued his FLSA claims in Texas state court.  Accordingly, Texas law governs the preclusive effect that the Court will give the state court judgment.  *See Boundy*, 2002 WL 31415998, at *7.

In Texas, collateral estoppel forecloses relitigation of distinct issues where (1) the party against whom it is asserted was the party in the former action or in privity with the party in the prior action; (2) the issue at stake in the current action is identical to the one in the former action; (3) that issue was actually litigated in the former action; and (4) the determination of that issue in the former action was a necessary part of the judgment.  *See Recover Edge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995); *see also Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 676 n.15 (5th Cir. 2003) (quoting *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999)); *Boundy*, 2002 WL 31415998, at *7.  The parties need not be completely identical; it is only necessary that the party against whom issue preclusion is sought was a party, or was in privity with a party, in the prior litigation.  *Eagle Props. Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

Here, Plaintiff is the party against whom the collateral estoppel defense is being asserted. (*See* doc. 61 at 12-13.)  He previously filed suit in state court asserting claims under the FLSA.  (*See* doc. 62-1 at 4-10.)  Because he is a party to both actions, this defense may bar his present claims if the remaining three essential elements are satisfied.  *See Dewhurst*, 90 S.W.3d at 288.

In determining whether the issues are identical, the second element, a court will consider the prior judgment, but is "free to go beyond the judgment . . . and may examine the pleadings and the evidence in the prior action."  *Santopadre v. Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 273 (5th Cir. 1991); *see also Recover Edge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("To define the issue that was actually litigated in the first proceeding, we look to the jury's special

verdict.").  Plaintiff's claims for relief under the FLSA in both the state court case and this action are based on his allegations that he was not properly compensated during his employment, and that he was wrongfully classified as an exempt employee under the FLSA.  (*See* docs. 57 at 9-13; 62-1 at 4-8.)  Because the claims and issues are identical, the second element is satisfied.

The third element is also met here because the issues were fully litigated in the first action. The state court held a trial, considered the documents and arguments of the parties, and determined that "Plaintiff did not prove that he [was] entitled to recover damages under the [FLSA]." (doc. 62-1 at 10.)  It ultimately dismissed his claims with prejudice after determining that he failed to prove that he was entitled to recovery under the FLSA, so the fourth element is also satisfied.  (*Id.*)

In conclusion, because the state court determined that Plaintiff was not entitled to recover damages under the FLSA, those issues cannot be relitigated here by the party who lost in the first proceeding.  *See Dewhurst*, 90 S.W.3d at 288 .  Plaintiff's FLSA claims should be dismissed with prejudice because they are barred by the doctrine of collateral estoppel.  *See Benson v. JP Morgan Chase Bank N.A.*, No. 3:14-CV-2694-M-BK, 2014 WL 5682269 (N.D. Tex. Nov. 4, 2014) (finding that claims previously litigated in state court were barred by collateral estoppel in federal court).

## C.    Failure to State a Claim

Defendants also move to dismiss Plaintiff's remaining federal claims for failure to allege sufficient facts to state a claim for relief.  (*See* doc. 61 at 2-3, 14, 17-18, 22-23.)

### 1.    *FCRA Claim*

Defendants seek dismissal of Plaintiff's claims under the FCRA on grounds that the statute does not apply to them because they are not consumer reporting agencies.  (*Id*. at 17-18.)

As noted, the FCRA was enacted "to ensure fair and accurate credit reporting, promote

efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co.*, 551 U.S. at 52

(citing 15 U.S.C. § 1681(b)).   Among other things, the Act "require[s] that consumer reporting

agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit,

personnel, insurance, and other information in a manner which is fair and equitable to the consumer,

with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."

15 U.S.C.A. § 1681(b); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 465 (5th Cir. 2006).  The

FCRA defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the practice of assembling or evaluating
> consumer credit information or other information on consumers for the purpose of
> furnishing consumer reports to third parties, and which uses any means or facility of
> interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C.A. § 1681a(e) (West 2010).

Although "the FCRA primarily regulates consumer credit reporting agencies, the statute also

creates various obligations on 'furnishers of information' to provide accurate information to

consumer credit reporting agencies."  *Smith v. Nat'l City Mortgage*, No. A-09-CV-881 LY, 2010

WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010) (citation omitted); *see* 15 U.S.C.A. § 1681s–2.

While the FCRA does not define "furnisher of information," courts in the Fifth Circuit "have defined

the term broadly to mean 'an entity [that] transmits information concerning a particular debt owed

by a consumer to a consumer reporting agency.'"  *Alam v. Sky Recovery Servs., Ltd.*, No. Civ.A.

H-08-2377, 2009 WL 693170 at *4 (S.D. Tex. Mar. 13, 2009) (quoting *Thomasson v. Bank One*, 137

F. Supp. 2d 721, 722 (E.D. La. 2001)).

Here, Plaintiff does not allege that any of the Defendants are consumer reporting agencies.

(*See* doc. 57.)  He appears to assert claims against them as "furnishers of information" because they

25

acted through Recruiter to provide an illegal and fraudulent employment reference to a private consumer reporting agency. (*Id*. at 3, 12-13.) Although he alleges that inaccurate information was provided to a consumer reporting agency, he fails to allege that this information concerned any "'particular debt owed by a consumer to a consumer reporting agency.'" *See Alam*, 2009 WL 693170 at *4 (quoting *Thomasson*, 137 F. Supp. 2d at 722). He appears to contend only that the employment reference contained a "derogatory account of [him] . . . ." (doc. 57 at 13.) Defendants therefore do not qualify as furnishers of information. *See Alam*, 2009 WL 693170 at *4 (quoting *Thomasson*, 137 F. Supp. 2d at 722); *see also Childs v. Resident Collect, Inc.*, No. 3:15-CV-403-L, 2017 WL 3980621, at *8 (N.D. Tex. Sept. 11, 2017) (finding that the defendants were not "furnishers of information" where they did not furnish information concerning a debt owed by the plaintiff). Because he fails to allege any facts showing that the FCRA applied to Defendants as consumer reporting agencies or funishers of information, his claims under that statute should be dismissed with prejudice for failure to state a claim.[15] *Crain v. Credit Protection Ass'n*, No. 3:09-CV-2353-D, 2010 WL 2891032, at *2 (N.D. Tex. May 19, 2010) (finding that FCRA claim should be dismissed with prejudice for failure to state a claim where the plaintiff failed to plead facts to support a cause of action).[16]

---

[15] Even if Plaintiff alleged facts sufficient to support a finding that Defendants are "furnishers of information" under 15 U.S.C.A. § 1681s–2, there appears to be no private right of action for violations of that statute. *See Patterson v. Long Beach Mortg. Co.*, No. 3:07-CV-1602-O-BH, 2009 WL 4884151, at *4 (N.D. Tex. Dec. 15, 2009).

[16] Defendants request attorneys' fees based on Plaintiff's FCRA claim because he could not "possibly have had a good faith basis for bringing an FCRA claim" against them. (doc. 61 at 18 n.8.) While a prevailing defendant in an FCRA action may be entitled to reasonable attorney's fees and costs under 15 U.S.C. § 1681o(b), the defendant cannot recover such an award unless a court finds that the plaintiff brought the FCRA action in bad faith or for purposes of harassment. *See* 15 U.S.C. § 1681o(b); *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 610–11 (W.D. Tex. 2010) (citing 15 U.S.C. § 1681o(b)). To the extent Defendants seek attorneys' fees based on Plaintiff's FCRA claim, they may file a post-judgment request under Federal Rule of Civil Procedure 54(d)(2) that also complies with the applicable Local Civil Rules for the Northern District of Texas.

### 2.    CFAA, ECPA, and SCA Claims

Defendants also move to dismiss Plaintiff's claims under the CFAA, ECPA, and SCA because these statutes do not "apply to the alleged 'forged signature' of a handbook acknowledgment." (doc. 61 at 22-23.)[17]

As noted above, the CFAA prohibits unauthorized access to protected computers; the ECPA prohibits persons from using or endeavoring to use "any wire, oral, or electronic communication;" and the SCA prohibits persons from unlawfully accessing an electronic communication facility to obtain, alter, or prevent unauthorized access to wire or electronic communications while in electronic storage. *See* 18 U.S.C. § 1030(a)(2), (a)(4), (a)(5) (CFAA); 18 U.S.C. § 2511(1)(d) (ECPA); 18 U.S.C. § 2701(a)(1) (SCA).

Here, Plaintiff alleges that Employer created his forged electronic signature using Docusign software and "made multiple copies and pastes in electronic document forms . . . ." (doc. 57 at 20.) He claims that Employer "has committed multiple violations by forging an electronic signature in an acknowledgment form, and a receipt for one employee handbook form" without Plaintiff's consent. (*Id.*) He asserts that his claims under the CFAA, ECPA, and SCA "relate to disclosures of intercepted electronic information that occurred . . . during the on[-]boarding employment process . . . ." (*Id.*) He does not allege any facts regarding unauthorized access to any protected computer as required by the CFAA, however. *See* 18 U.S.C. § 1030(a)(2), (a)(4), (a)(5). He also fails to allege any facts regarding any electronic information or communications that were allegedly intercepted, and he makes only conclusory allegations regarding the alleged disclosure of any

---

[17] They also reassert their previous argument that the FCRA is inapplicable to them to the extent Plaintiff is asserting a claim under the FCRA based on the allegedly forged signature. (doc. 61 at 22-23.)

intercepted electronic information in support of his ECPA claim. *See* 18 U.S.C. § 2511(1)(d). He similarly does not allege any facts showing that any unlawful access to an electronic communications facility occurred to obtain, alter, or prevent unauthorized access to electronic communications as required by the SCA. *See* 18 U.S.C. § 2701(a)(1). Because he relies on conclusory allegations and fails to allege any facts to state a plausible claim for relief under the CFAA, ECPA, or SCA, those claims should be dismissed. *See Twombly*, 550 U.S. at 570.

### 3.      *DPPA Claim*

Defendants next move to dismiss Plaintiff's claim under the DPPA for failure to allege sufficient facts to state a claim. (doc. 61 at 2, 14.)

The DPPA "establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." *Reno v. Condon*, 528 U.S. 141, 144 (2000); *see Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 659 (E.D. La. 2004). It "regulates driver's license records that contain 'personal information' defined to include the names, photographs, social security numbers, drivers license numbers, addresses, telephone numbers, and medical and disability information of individuals." *Taylor*, 612 F.3d at 331–32 (citing 18 U.S.C. § 2725(3)). "The DPPA's provisions do not apply solely to states;" it "also regulates the resale and redisclosure of drivers' personal information by private persons who have obtained that information from a state DMV." *Reno*, 528 U.S. at 146 (citing 18 U.S.C. § 2721(c)). A defendant may be held liable under the DPPA if: "(1) the defendant knowingly obtains, discloses or uses personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted" by statute. *Id.* (citing 18 U.S.C. § 2724(a); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008)). The third factor is only satisfied if personal

28

information was obtained, disclosed, or used for a purpose not enumerated under § 2721(b). *Id.*; *see also Reno v. Condon*, 528 U.S. 141, 146 (2000).

Here, Plaintiff alleges that Employer, through Recruiter, "provided an illegal, fraudulent employment reference to a private consumer reporting agency" "showing flagrant adverse employment action with negative, disparaging, and unfavorable information towards Plaintiff." (doc. 57 at 12-13.)  While he alleges that information was provided about him, he does not identify what this information was, or provide any facts showing that it was personal information from a driving record that was obtained from a state DMV.  *See Reno*, 528 U.S. at 146; *Taylor*, 612 F.3d at 331–32.  He also provides no factual allegations showing that any information was obtained, disclosed, or used for an impermissible purpose.  *Taylor*, 612 F.3d at 331–32.  Because Plaintiff's allegations fail to state a claim for relief that is plausible on its face under the DPPA, this claim should also be dismissed.  *See Twombly*, 550 U.S. at 570.

**D.**    **State Law Claims**

Defendants also move to dismiss Plaintiff's state law claims for fraud, intentional interference with contractual obligations, deliberate indifference, respondeat superior, corporate wrongdoing, breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and civil conspiracy.  (doc. 61 at 2-3, 18-21, 24-25.)

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2)

the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. His state law claims arise from the same "common nucleus of operative facts" as his federal claims, namely, Defendants' alleged acts during and after employment term. (*See* doc. 57.) Requiring Plaintiff to litigate his claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given Plaintiff's failure to state a claim for relief against Defendants in federal court, or otherwise show that a genuine controversy exists between the parties, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See*

*McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating the case). Because all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, the Court should exercise supplemental jurisdiction.

### 1.    Sabine Pilot Doctrine[18]

Defendants move to dismiss Plaintiff's state law claim for wrongful and retaliatory discharge under the *Sabine Pilot* doctrine as barred by the statute of limitations, or alternatively, by collateral estoppel. (doc. 61 at 9, 11-12.)

Under Texas law, an employer may "terminate an at-will employee without fear of legal repercussions for a good reason, a bad reason, or no reason at all." *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 502 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007)). *Sabine Pilot* establishes a common-law exception to the employment at-will doctrine, prohibiting an employer from firing an employee solely because that employee refused to perform an illegal act. 687 S.W.2d at 735.

### a.    Limitations

Defendants assert that Plaintiff's *Sabine Pilot* claim is time-barred because he filed his final amended complaint over two years after his termination. (doc. 61 at 9.)

To state a claim for wrongful termination claim under *Sabine Pilot*, a plaintiff must allege that: (1) he was required to commit an illegal act that carries criminal penalties; (2) he refused; (3)

---

[18] This doctrine takes its name from the Texas Supreme Court case of *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

he was discharged; and (4) the sole reason for his discharge was his refusal to commit the unlawful act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot*, 687 S.W.2d at 735). The statute of limitations for a claim asserted under the *Sabine Pilot* doctrine is two years. *Riddle v. Dyncorp Intern., Inc.*, 666 F.3d 940, 943 (5th Cir. 2012) (citing *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 79–80 (Tex. App.—San Antonio 1996, writ denied)).

Here, Plaintiff was terminated from his position on February 21, 2017. (doc. 57 at 6.) He filed his original complaint in this action asserting liability based on *Sabine Pilot* on February 19, 2019. (*See* doc. 3 at 28.) He then filed his final amended complaint in this action again asserting a claim under *Sabine Pilot*. (*See* doc. 57 at 8-9.) While his final amended complaint was filed outside of the two year limitations period for asserting this claim, his initial complaint was filed within the limitations period specifically asserting this claim. (*See* docs. 3; 57.) Accordingly, this claim was asserted within the applicable limitations period, and Defendants' motion to dismiss this claim on this basis should be denied.

### b.    Collateral Estoppel

Defendants also move to dismiss Plaintiff's *Sabine Pilot* claim based on collateral estoppel because it is "fatally intermixed" with the STAA claim asserted in his first administrative case. (doc. 61 at 11-12.)

The doctrine of collateral estoppel requires federal courts to give the decisions of state administrative agencies the same preclusive effect that they would be provided under the law of the state where the judgment was entered. *See United States v. State of Texas*, 158 F.3d 299, 304 (5th Cir. 1998) ("Common-law doctrines of issue and claim preclusion ordinarily shield final judicial determinations of administrative bodies, whether under the aegis of federal or state government.");

*see also Mullinax v. Texarkana ISD*, No. 5:99CV190, 2000 WL 33675708, at *5 (E.D. Tex. Aug. 7, 2000) ("The factual determination by the Independent Hearing Examiner that Plaintiff endangered the health and safety of students in her care and that such endangerment was good cause for termination of the employment contract bars Plaintiff from relitigating those same factual claims in this action."). Because Plaintiff previously pursued his wrongful termination claim administratively, Texas law governs the preclusive effect to be given to the ARB's administrative decision. *See id*.

As stated, a party asserting collateral estoppel must prove that: (1) the party against whom it is asserted was the party in the former action or in privity with the party in the prior action; (2) the issue at stake in the current action is identical to the one involved in the former action; (3) that issue was actually litigated in the former action; and (4) the determination of that issue in the former action was a necessary part of the judgment. *See Recover Edge L.P.*, 44 F.3d at 1291 (5th Cir. 1995); *see also Vasquez*, 325 F.3d at 676 n.15 (quoting *Next Level Commc'ns LP*, 179 F.3d at 250); *Boundy*, 2002 WL 31415998, at *7. A decision of a state administrative agency is entitled to preclusive effect only "where the administrative agency has acted in adjudicatory, judicial or quasi-judicial capacity." *United States*, 158 F.3d at 304.

Defendants assert their collateral estoppel defense against Plaintiff, who previously filed his first administrative action based on his alleged wrongful termination on March 20, 2017. *See Budri*, 2018 WL 6978226, at *1.[19] Because he is a party to both actions, the first element is satisfied. *See Dewhurst*, 90 S.W.3d at 288. The second element is satisfied as well because Plaintiff's claims for relief under the STAA in his administrative case and his claims for relief in this action under *Sabine*

---

[19] This case may be judicially noticed because it is a matter of public record and its contents cannot reasonably be disputed. *See Norris*, 500 F.3d at 461 n.9; *Taylor*, 162 F.3d at 831; *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed.").

*Pilot* are based on his allegations that he was wrongfully terminated in retaliation for raising safety concerns. *See Budri*, 2018 WL 6978226, at 1. This issue was fully litigated in the administrative action, and its decision that Plaintiff failed to establish causation was subsequently affirmed by the Fifth Circuit. *See id.*; *see also Budri*, 764 F. App'x at 431–33. Lastly, a determination of this issue was necessary to the judgment because Plaintiff asserted that he was wrongfully discharged based on retaliation, and the administrative court dismissed his claims after finding that he failed to establish causation.

Because the administrative court determined that Plaintiff was not entitled to recover damages for the alleged wrongful and retaliatory termination, that issue cannot be relitigated here by the party who lost in the first proceeding. *See Dewhurst*, 90 S.W.3d at 288; *see also Mullinax*, 2000 WL 33675708, at *5. Accordingly, Plaintiff's claim for wrongful and retaliatory discharge under *Sabine Pilot* should be dismissed with prejudice as barred by the doctrine of collateral estoppel.[20] *See Mullinax*, 2000 WL 33675708, at *5 (finding that the determination of an administrative body barred relitigation of claims based on the same allegations in federal court).

### 2.    *Fraud*

Defendants next argue that Plaintiff's fraud claims and any related claims should be

---

[20] Plaintiff also states that "Defendants should be held responsible for wrongful termination per the 'Cat's Paw Theory.'" (doc. 57 at 8.) Under the "cat's paw" theory, "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the "cat's paw," for the subordinate employee's prejudice.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). To the extent that he seeks to assert this as a separate claim against Defendants, it is subject to dismissal for the same reasons as his *Sabine Pilot* claim. Although Defendants have not expressly moved to dismiss this claim, a court may *sua sponte* dismiss claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice of its intention and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)). "The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond." *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-0082-N (BH), 2012 WL 6764551, at *7 (N.D. Tex. Dec. 10, 2012), *adopted by* 2013 WL 55669 (N.D. Tex. Jan. 4, 2013) (citing *Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n.1 (E.D. Tex. Sept. 26, 2008)).

dismissed because his allegations do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b).  (doc. 61 at 24-25.)

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd., v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (per curiam) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179).

Here, Plaintiff alleges that Defendants, acting through Recruiter provided a fraudulent employment reference to a consumer reporting agency, and that they fraudulently fabricated and used his electronic signature.  (doc. 57 at 3, 12-13. 15.)  He does not identify any material, false

35

representations that Defendants made to him that he relied upon to his detriment, however. (*See id*.)
His general, conclusory allegations fall well short of the "the who, what, when, where, and how"
heightened pleading requirement required under Rule 9(b).  *See Williams*, 112 F.3d at 177; *see also*
Fed. R. Civ. P. 9(b).  Because he fails to allege the elements of fraud with sufficient particularity
under Rule 9(b), his fraud claims should be dismissed for failure to state a claim.[21] *See Turner v.*
*AmericaHomeKey Inc.*, No. 3:11-CV-860-D, 2011 WL 3606688, at *5 (N.D. Tex. Aug. 16, 2011)
(dismissing fraud claim for failure to plead with particularity under Fed. R. Civ P. 9(b)).

### 3.    *Tortious Interference*[22]

Defendants also move to dismiss Plaintiff's claim that they intentionally interfered with
contractual obligations on grounds that he fails "to make allegations on more than one of the
elements required" to support his claim.  (doc. 61 at 18-19.)

A plaintiff alleging interference with an existing contract under Texas law must prove (1)
that a contract subject to interference existed; (2) that the alleged act of interference was willful and
intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual
damage or loss occurred.  *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489 (5th Cir.
2008) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).  A plaintiff

---

[21] Plaintiff also makes allegations of forgery regarding his signature in his final amended complaint.  (doc. 57 at 15, 18.)  To the extent he seeks to assert a separate claim for forgery, it should be dismissed based on his failure to plead the circumstances constituting the alleged fraud or forgery with particularity because allegations of forgery are based in fraud.  *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *see also Kreway v. Countrywide Bank*, FSB, 647 F. App'x 437, 438 (5th Cir. 2016) (affirming dismissal of claims relying on allegations of forgery because the complaint "did not plead any facts relating to who perpetrated the alleged forgery or how, when, and where the alleged forgery was executed" and fell short of the pleading requirements of Rule 9(b)).

[22] Though Plaintiff identifies this claim as "intentional interference with contractual obligations," he appears to be asserting the claim of tortious interference with an existing contract.  (*See* doc. 57 at 14-15.)

must also allege that "the defendant[s] took an active part in persuading a party to a contract to breach [the contract]." *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied) (quoting *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 803 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994 (1988)).

Here, Plaintiff alleges that Supervisor violated Employer's company policy by failing to provide him with an employee handbook on his first day of employment. (doc. 57 at 13-14.) He asserts that Supervisor's "willful reckless behavior and not giving to [him] a hardcopy of the [e]mployee [h]andbook on his first day of employment has amounted to deliberated [sic] indifference and intentional interference with contractual provisions . . . ." (*Id.* at 15.) Plaintiff appears to contend that Employer's company policy provided him with a contractual right to receive the employee handbook. (*See id.* at 13-14.) Texas courts have held, however, that company policies do not create contractual rights unless they contain "express language clearly indicating contractual intent." *Seals v. City of Dallas*, 249 S.W.3d 750, 757 (Tex. App.—Dallas 2008, no pet.); *see Adams v. Mutual of Omaha Inc. Co.*, No. 3:14-CV-4881-D, 2014 WL 1386563, at *4 (N.D. Tex. Apr. 9, 2014) (collecting cases recognizing that company policies are generally not contractual). Plaintiff does not allege that Employer's company policy contained express language creating contractual rights, so he cannot rely on company policy to show the existence of a contract. *See Adams*, 2014 WL 1386563, at *4. Even assuming that Plaintiff sufficiently identified the existence of a contract, he has failed to provide more than conclusory allegations that Supervisor or any of the other Defendants willfully and intentionally interfered with any contract, or that any interference caused

damage.[23]  *See Amigo Broad., LP*, 521 F.3d at 489 (citing *ACS Investors, Inc.*, 943 S.W.2d at 430).

Because Plaintiff has not sufficiently alleged the necessary elements for a tortious interference with a contract claim, he has failed to nudge his claim across the line from conceivable to plausible, and his claim should be dismissed.  *Twombly*, 550 U.S. at 555; *see Copeland v. Minton*, No. 3:16-CV-726-L, 2016 WL 7971584, at *6 (N.D. Tex. Dec. 29, 2016) (recommending dismissal of tortious interference with contract claim for failure to state a claim).

### 4.        *Breach of Contract*

Defendants next move to dismiss Plaintiff's breach of contract claim against Supervisor because he has not alleged the existence of any contract that would support it.  (doc. 61 at 20-21.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).  "A breach occurs when a party fails or refuses to do something [s]he has promised to do."  *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  "Whether a party has breached a contract is a question of law."  *Gardocki v. J.P. Morgan Chase Bank*, No. 12-2254, 2014 WL 12537076, at *4 (S.D. Tex. June 11, 2014) (citing cases).

Here, Plaintiff alleges that Supervisor committed breach of contract "when he declined to

---

[23] In his final amended complaint, Plaintiff lists "Deliberate Indifference" together with his claim for intentional interference with contractual obligations.  (doc. 57 at 12.)  He does not appear to assert a separate claim for deliberate indifference, however, and appears only to make conclusory assertions that the alleged contractual interference was willful because Supervisor was deliberately indifferent to the harm that would result from his alleged conduct.  (*Id*. at 15.)

ensure" that Plaintiff received an employee handbook on his first day of employment. (doc. 57 at 17.) He fails to identify any contract that was breached, however. (*See id*. at 17-18.) He states only that Supervisor failed to follow Employer's "company regulations and policies" by not providing him with the employee handbook. (*Id*.) As discussed, however, Plaintiff alleges no facts to show that Employer's company policy contained "express language clearly indicating contractual intent." *Seals*, 249 S.W.3d at 757; *see Adams*, 2014 WL 1386563, at *4. Because his conclusory allegations fail to give rise to a plausible claim for breach of contract, this claim should be dismissed for failure to state a claim. *See Adams*, 2014 WL 1386563, at *4 (dismissing breach of contract claim based on employee handbooks and policy manuals); *Chapa v. Chase Home Fin. LLC*, No. C-10-359, 2010 WL 5186785, at *5 (S.D. Tex. Dec. 15, 2010) (collecting Texas cases dismissing breach of contract claims where the plaintiff failed to show the contract or provision that the defendant breached).[24]

### 5.    *Breach of Fiduciary Duty*

Defendants also seek dismissal of Plaintiff's claim for breach of fiduciary duty because he failed to allege any facts indicating that Supervisor or any other Defendant owed him a fiduciary duty. (doc. 61 at 21.)

Under Texas law, the essential elements of a breach of fiduciary duty claim are "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Hunn v. Dan Wilson Homes, Inc*., 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010,

---

[24] Plaintiff also alleges that Supervisor "breached his own implied contract" by failing to provide him with an employee handbook. (doc. 57 at 17.) To the extent this is a separate claim from his breach of contract claim, it is subject to dismissal for the same reasons. *See Adams*, 2014 WL 1386563, at *4 (stating that employee handbooks and policy manuals "do not create implied contracts between the employer and employee . . . .")

no pet.)).  Whether a party owes a fiduciary duty is a question of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).  Courts impose fiduciary duties on parties based on the special nature of the relationships between such parties. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002).  A fiduciary duty arises from certain formal relationships as a matter of law, such as an attorney-client or trustee relationship. *Id.* Courts also recognize an informal fiduciary duty that arises from "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).

Here, Plaintiff alleges that on January 30, 2017, he put in a request to purchase a new headlamp bulb to replace the burnt-out bulb in his commercial truck as was necessary to comply with safety regulations, but Supervisor denied his request.  (doc. 57 at 18.)  Plaintiff contends by denying his request, Supervisor breached his fiduciary duty by failing to comply with a provision in the employee handbook that required him to assist Plaintiff while he was on the road, and to authorize electronic payments to allow him to pay for "parts and/or accessories of the truck equipment for minor repairs . . . to be made by the . . . [him] on the road" in order to comply with safety regulations.  (*Id.*)  Although Plaintiff appears to allege that Supervisor owed him a duty to assist him while on the road, he fails to identify any "special relationship" between him and Supervisor or any other Defendant, and he fails to allege how any breach directly resulted in an injury to him.  (*See id.*)  Even accepting all of his allegations as true, Plaintiff fails to state a claim for breach of fiduciary duty, and this claim should be dismissed.  *See Richardson v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-2578-O, 2014 WL 7336890, at *7-8 (N.D. Tex. Dec. 24, 2014) (dismissing breach of fiduciary duty claims where plaintiff failed to allege existence of a "special relationship of trust and confidence"); *see also Johnson v. Affiliated Computer Servs., Inc.*, No.

3:10-CV-2333-B, 2011 WL 4011429, at *6 (N.D. Tex. Sept. 9, 2011) (dismissing breach of fiduciary duty claim where plaintiff failed to plead sufficient facts that would indicate the existence of a fiduciary duty owed by the defendant); *cf. Kardell v. Union Bankers Ins. Co.*, No. 05-01-00662-CV, 2002 WL 1809867, at *7 (Tex. App.—Austin Aug. 8, 2002, no pet.) (finding that a fiduciary duty did not exist between an employer and employee "based solely on the length of the employment relationship and the employee's subjective trust of the employer." (citing cases)).

### 6. *Breach of the Duty of Good Faith and Fair Dealing*

Defendants next seek dismissal of Plaintiff's claim for breach of the duty of good faith and fair dealing because "Texas employers do not owe a duty of good faith and fair dealing to [their] at-will employees . . . ." (doc. 61 at 21.)

Under Texas law, "there is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions in Texas." *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006). Such a duty can arise when it is "created by express language in a contract," however, or when "a special relationship of trust and confidence exists between parties to [a] contract." *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. App.—Amarillo 1988, writ denied). Though there are a limited number of circumstances where a plaintiff may assert a special relationship justifying imposing a duty of good faith and fair dealing, the Texas Supreme Court has expressly held "that there is no duty of good faith and fair dealing in the employment context." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000).

Plaintiff contends that Supervisor breached his duty of good faith and fair dealing based on his alleged failure to provide him with a copy of the employee handbook on his first day. (doc. 57 at 17.) He fails to identify or allege any contract or special relationship between him and

Supervisor, however.  (*See id*.)  He only alleges that Supervisor's alleged action violated Employer's policies and regulations.  (*Id*.)  As noted, Plaintiff fails to allege any facts to support a finding that Employer's policies, or even the employee handbook, contained any express language creating a contractual relationship between him and Employer or any other Defendant.  Additionally, his allegations fail to show that Supervisor owed him a duty of good faith and fair dealing based on any "special relationship of trust and confidence" between them, and Employer's relationship with him as an at-will employee does not give rise to a fiduciary duty.  *See City of Midland*, 18 S.W.3d at 216; *Lovell*, 754 S.W.2d at 302.  Even accepting Plaintiff's factual allegations as true, he fails to "raise a right to relief above the speculative level" because he was an at-will employee, and neither Employer nor any other Defendant owed him a duty of good faith and fair dealing.  *See City of Midland*, 18 S.W.3d at 216.  Because Plaintiff fails to state a plausible claim for breach of the duty of good faith and fair dealing, this claim should be dismissed for failure to state a claim.  *See Nichols v. Wells Fargo Bank, N.A.*, No. 3:17-CV-02096-M-BH, 2018 WL 2164524, at *4 (N.D. Tex. Apr. 6, 2018) (recommending dismissal of claim for breach of the duty of good faith and fair dealing under Rule 12(b)(6)).

### 7.    *Corporate Wrongdoing*

Defendants also argue that any claim for corporate wrongdoing should be dismissed because Plaintiff has failed to allege how any of Vice President's "alleged actions constituted actionable conduct." (doc. 61 at 19-20.)[25]  Under Texas law, "a corporate officer may be held personally liable for corporate wrongdoing in which he is an active participant or has knowledge of the tortious

---

[25] They also assert that Plaintiff has failed to identify any actionable conduct to support liability on a theory of *respondeat superior*.  (doc. 61 at 19-20.)

conduct, either actual or constructive." *Labaty v. UWT, Inc.*, No. SA-13-CV-389-XR, 2013 WL 4520562, at *5 (W.D. Tex. Aug. 26, 2013) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984)). As discussed, Plaintiff has failed to allege facts to support any of his claims against Employer or any of the other Defendants. Because he has not sufficiently identified any tortious conduct by Employer that would support liability against Vice President on grounds that he participated in or knew about any alleged tortious conduct, Plaintiff cannot successfully state a claim for relief against him for corporate wrongdoing. *See id*. He has also failed to identify any personal involvement in any allegedly tortious conduct.[26] *See id*. Accordingly, any claim for corporate wrongdoing against Vice President should be dismissed.

### 8.    *Civil Conspiracy*

Finally, Defendants move to dismiss Plaintiff's civil conspiracy claim on grounds that he has failed to allege facts showing that they engaged in any wrongful conduct. (doc. 61 at 24.) They also argue that he has failed to allege that they had a meeting of the minds or that they took any unlawful, overt acts in furtherance of the alleged conspiracy. (*Id.*)

Under Texas law, civil conspiracy is:

a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds[27] on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as

---

[26] To the extent Plaintiff is asserting a separate claim based on *respondeat superior*, he similarly fails to state a claim because he has not shown any personal involvement in any tortious activity by Vice President or the other individual Defendants. *See Rodriguez v. Panther Expedited Servs., Inc.*, No. 04-1-00291-CV, 2018 WL 3622066, at *5 (Tex. App.—San Antonio July 31, 2018, pet. denied) (citing cases) (stating the elements for *respondeat superior* liability in Texas).

[27] To satisfy the meeting of the minds element, the defendants must have had "'specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.'" *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, No. 3:15-CV-4108-D, 2017 WL 635031, at *13 (N.D. Tex. Feb 16, 2017) (quoting *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010)).

the proximate result.

*Rodgers v. City of Lancaster Police*, No. 3:13-CV-2031-M-BH, 2017 WL 457084, at *16 (N.D. Tex. Jan. 6, 2017) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)), *adopted by* 2017 WL 447216 (N.D. Tex. Feb. 2, 2017). "[I]n short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy." *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 WL 1281130, at *3 (N.D. Tex. Apr. 6, 2017) (quoting *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968)). "[A] defendant's liability for conspiracy depends on [his or her] participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Additionally, it requires a specific intent. *I Love Omni*, 2017 WL 1281130, at *3.

Here, Plaintiff alleges that Defendants committed multiple unlawful acts. (*See* doc. 57.) As discussed, he has failed to allege sufficient facts to nudge any of his claims against any of the Defendants across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 555. Without some underlying unlawful or tortious act, he cannot hold any of the defendants liable for civil conspiracy. *See Tilton*, 925 S.W.2d at 681. Moreover, he fails to allege any facts showing that there was a "preconceived plan" to commit any unlawful or tortious act. *See Samsung Elecs. Am., Inc.*, 2017 WL 635031, at *13. Because Plaintiff has failed to plead sufficient allegations to support the elements of his civil conspiracy claim, he fails to state a claim. *See Baron v. Baron*, No. 3:18-CV-3465-C-BH, 2018 WL 1156002, at *8-10 (N.D. Tex. Feb. 13, 2008) (recommending dismissal of Texas civil conspiracy claim based on Plaintiff's failure to plead facts supporting the elements of his claim), *adopted by* 2018 WL 1157947 (N.D. Tex. Mar. 2, 2018).

## IV. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. Courts, nonetheless, may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995), or if it finds that the plaintiff has alleged his or her best case, *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). When a court "outline[s] in [its] opinion the deficiencies" of plaintiff's complaint and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims*, 2001 WL 627600, at *2-*3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)).

Here, Plaintiff has amended his complaint six times and filed multiple motions and notices regarding the allegations raised in his final amended complaint. He also submitted a response and surreply to Defendants' motion to dismiss. It therefore appears that he has alleged his best case, and any further opportunity to amend is unwarranted.

45

## V. RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED**, Plaintiff's claims under the STAA should be **DISMISSED without prejudice** for lack of subject-matter jurisdiction, any claim asserted under the cat's paw theory of liability should be *sua sponte* **DISMISSED with prejudice** for failure to state a claim, and all of his remaining claims should be **DISMISSED with prejudice** for failure to state a claim.

**SO RECOMMENDED** on this 20th day of September, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE