IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADRIANO KRUEL BUDRI, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:19-CV-0409-N-BH |
| | § | |
| FIRSTFLEET INC., et. al, | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court for recommendation is the *Defendants' Motion for Order to Show Cause and Brief in Support*, filed April 20, 2020 (doc. 165). Based on the relevant filings and applicable law, the motion should be **DENIED**.

**I. BACKGROUND**

Adriano Kruel Budri (Plaintiff) was formerly employed by FirstFleet, Inc. (Employer) as a non-exempt, full-time commercial truck driver from January 25, 2017 until February 21, 2017. (doc. 57 at 4, 9.)[2] He claims he was "illegally enticed and induced . . . to violate Texas Public Policy and commercial motor safety regulations" during the majority of his employment term, and that he was also "not properly compensated weekly for" the amount of hours he worked, including overtime. (*Id.* at 6, 11-12.) The events leading up to his allegedly "wrongful and retaliatory discharge occurred on February 17, 2017," when his supervisor (Supervisor) instructed him to park his commercial truck "in front of [a] shipper's location for a partial flat tire repair," but he refused

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

because the location was not safe, and it was "completely illegal to park any vehicle, at any time[,] in that area under the Texas Transportation Code." (*Id*. at 7.)  On February 21, 2017, Plaintiff notified Supervisor that he had contacted Employer's safety director "to raise some safety issues," and five hours later Supervisor informed him of his termination.  (*Id*. at 8.)  He subsequently filed an internal appeal letter in accordance with Employer's company policy, but he did not receive a response from Employer's Vice President regarding his termination.  (*Id*. at 16.)

On June 12, 2017, Plaintiff received a copy of an employment reference prepared by a recruiter (Recruiter), that was sent to a private consumer reporting agency specializing in trucking employment references.  (*Id*. at 12-13.)  He claims the reference was illegal and fraudulent because it contained "negative, disparaging, and unfavorable information towards [him]." (*Id*. at 13.)  He also claims that Employer created a forged electronic signature using Docusign software, and that it was used to make "multiple copies and pastes in electronic employment document forms . . . including in one W4-IRS [f]orm forged for the fiscal year of 2016."  (*Id*. at 19-20.)

Since being terminated, Plaintiff has pursued multiple claims against Employer, Supervisor, Vice President, and Recruiter (collectively, Defendants) in federal and state courts, and before administrative agencies.  (*See* doc. 29-1.)[3]  On March 20, 2017, he filed his first administrative complaint with the United States Department of Labor's (DOL) Occupational Safety and Health Administration (OSHA), alleging that Employer violated the Surface Transportation Assistance Act (STAA) "when it terminated his employment in retaliation for raising safety concerns."  *See Budri v. Firstfleet, Inc.*, No. 18-025, 2018 WL 6978226, at *1 (U.S.

---

[3] Defendants point out that Plaintiff has also filed grievances against their attorneys with the state bar, as well as grievances against a Texas state judge, an Administrative Law Judge (ALJ), and a court reporter in connection with his multiple actions.  (*See* docs. 29 at 2; 29-1 at 42-61.)

Dep't of Labor Admin. Rev. Bd. June 19, 2018).  After reviewing his complaint, an Administrative Law Judge (ALJ) dismissed his claim, and decision was affirmed by the DOL's Administrative Review Board (ARB) and the Fifth Circuit.  *Id*.; *see Budri v. Admin. Review Bd., United States Dep't of Labor*, 764 F. App'x 431, 431 (5th Cir. 2019) (per curiam).  The United States Supreme Court later denied his petition for writ of certiorari.  *See Budri v. Dep't of Labor, Admin. Review Bd.*, 140 S. Ct. 386 (2019).

Also in 2017, Plaintiff filed two state actions in justice court against Employer, one of which was successfully removed to federal court.[4]  *See Budri v. FirstFleet, Inc.*, No. 3:17-CV-2945-C-BN (N.D. Tex. Nov. 15, 2017).  In the removed action, in which he asserted claims similar to those in this case, he filed a "barrage of motions" and objections to court orders that resulted in the entry of an order advising him "of certain expectations for parties . . . prosecuting or defending actions in" federal court.  (*See* doc. 29-1 at 29-30.)  It expressly cautioned Plaintiff that he was expected to prosecute his case "in a manner that [did] not unduly burden the [c]ourt," and specifically warned him that if he continued his "burdensome behavior," he would be subject to sanctions, including dismissal of his action.  (*Id*. at 33.)  He then moved to dismiss his claims, which were dismissed without prejudice.  (*Id*. at 36.)  Plaintiff also filed an action against Supervisor in 2017 under the Texas Citizens Participation Act in County Court at Law No. 1 of Tarrant County, which granted Supervisor's motion to dismiss, dismissed the case with prejudice, and ordered Plaintiff to pay $6,815 in reasonable attorneys' fees.  (*See id*. at 40.)[5]

---

[4] Defendants attempted to remove the second state action to federal court based on supplemental jurisdiction, but it was *sua sponte* remanded back to state court.  *See Budri v. FirstFleet, Inc.*, No. 3:17-CV-3241-C-BN, 2017 WL 6506469, at *1 (N.D. Tex. Nov. 30, 2017), *adopted by* 2017 WL 6513688 (N.D. Tex. Dec. 19, 2017).  The state court eventually dismissed that action without prejudice.  (doc. 29-1 at 38.)

[5] Plaintiff appealed the county court's decision to the Court of Appeals for the Second District of Texas, where he proceeded to file multiple motions, and that court expressly warned him that his appeal could be subject to

3

On January 23, 2018, Plaintiff filed a second administrative complaint with OSHA, alleging violations of the STAA based on the employment reference he received on June 12, 2017. (doc. 29-1 at 18.)  An ALJ reviewed his claim and determined that it was subject to dismissal as untimely because it was not filed within 180 days from the time he discovered the alleged violation. (*Id*. at 19-23.)  DOL's ARB eventually affirmed the ALJ's decision, but it subsequently vacated its final decision and dismissed the complaint for lack of jurisdiction after receiving notice that Plaintiff had filed his action in federal court before it had entered its final decision.  *See Budri v. Firstfleet, Inc.*, No. 2018-0055, 2019 WL 3780911, at *1 (U.S. Dep't of Labor Admin. Rev. Bd. July 30, 2019).

On March 26, 2018, Plaintiff filed a third administrative complaint with the Wage Division of the DOL, asserting violations of the Fair Labor Standards Act (FLSA) because he "was not properly compensated weekly" for the hours he worked, including overtime.  (doc. 57 at 11-12.)[6] He then filed a complaint in the Justice Court, Precinct 1, of Dallas County, alleging unpaid overtime wages under the FLSA.  (doc. 29-1 at 64.)  After a trial on February 4, 2019, the justice court found that Plaintiff had failed to prove that he was entitled to damages under the FLSA.  (*Id*.)

At some point, Plaintiff sent an email to Defendants' counsel, noting that they had asked him many times to hire a good attorney, but that he was unable to find one "due to the different lawsuits that [he had] filed . . . in different courts."  (*Id*. at 66.)  It stated that he had "been the most 'pain in the neck' opposed litigant" his employer's counsel had encountered in his entire career,

---

involuntary dismissal and sanctions if he continued to file such motions.  (*See* doc. 29-1 at 83-84.)  That court subsequently affirmed the county court's dismissal of his claims.  *Budri v. Humphreys*, No. 02-18-00070-CV, 2018 WL 3763920 (Tex. App.—Fort Worth Aug. 9, 2018, pet. filed).

[6] What occurred after he filed his complaint with the DOL is unclear.  (*See* doc. 57 at 11-12.)

that he was continuing to be a "pain in the neck," and that he was "doing what [he could] do" as a *pro se* party.  (*Id*.)  It also stated that he believed Defendants' counsel would provide any help needed to "finish this litigation with [him] and not because the financial value, but because of the 'pain in the neck' litigator that [he had] been almost for one year."  (*Id*.)  It concluded that due to the amount of time that he had already spent pursuing his actions, he could "continue to file again and again in various other subject matters," and that Defendants' attorney knew he could.  (*Id*.)

On February 19, 2019, Plaintiff filed this action against Defendants, alleging wrongful and retaliatory discharge, illegal and fraudulent employment reference, forged electronic signature, and failure to pay him for the time he worked.  (*See* doc. 3.)  He filed his first amended complaint on February 25, 2019, and subsequently filed second, third, fourth, and fifth amended complaints without leave or the consent of the opposing parties.  (docs. 7-11; *see* doc. 14.)  On March 11, 2019, Defendants moved to dismiss Plaintiff's first amended complaint and to strike his other amended complaints.  (doc. 15.)

On March 12, 2019, Defendants served a copy of their motion for sanctions on Plaintiff, informing him that they would file it if he did not voluntarily dismiss this action.  (docs. 29 at 10; 29-1 at 71.)  Plaintiff then filed a motion seeking leave to file his sixth amended complaint on March 15, 2019.  (doc. 22.)  Defendants filed their motion for sanctions under Rule 11 on April 3, 2019.  (doc. 29.)  Plaintiff filed a motion to strike it on April 8, 2019, and a supplemental motion to strike on April 11, 2019.  (docs. 36; 39.)  Also on April 11, 2019, Plaintiff filed a "Motion for Clarification," and two separate motions to "Leave Other Paper," on May 22, 2019 and May 23, 2019.  (docs. 38; 54-55.)

On May 23, 2019, the Court issued an order granting Plaintiff's motion for leave to amend,

5

deeming Defendants' motion to dismiss moot, and denying Plaintiff's remaining motions as moot. (doc. 56.) Defendants' motion for sanctions remained pending. (*See id.*; doc. 29.) Plaintiff was ordered to file one final amended complaint setting forth all of the claims he sought to assert in this action, and he was advised that he would not be granted a further opportunity to amend. (doc. 56 at 5-6.) He was expressly instructed that he must not file any additional motions that could be construed as seeking to amend or supplement his final amended complaint, and specifically warned that if he failed to follow the order, his non-compliant motions would be unfiled, and he would be subject to sanctions. (*Id.* at 6.)

On June 8, 2019, Plaintiff filed his final amended complaint, asserting wrongful and retaliatory discharge claims under the STAA and state law; violations of the FLSA, Fair Credit Reporting Act (FCRA), Driver's Privacy Protection Act (DPPA), Computer Fraud and Abuse Act (CFAA), Electronic Communications Privacy Act (ECPA), and Stored Communications Act (SCA); and state law claims for fraud, intentional interference with contractual obligations, corporate wrongdoing, breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and civil conspiracy. (doc. 57 at 6-22.)

On June 28, 2019, Defendants moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim; he responded on June 30, 2019, and Defendants replied on July 1, 2019. (docs. 60-63; 65.) After the motion to dismiss was filed, Plaintiff filed 14 motions and 9 notices in violation of the Court's prior orders. (*See* docs. 67; 69; 71; 72; 76-83; 87-90; 93-99.) By order dated September 4, 2019, the offending motions and notices were unfiled, the parties were ordered to refrain from filing any further documents, and Plaintiff was again warned that he would be subject to sanctions should he disobey the order. (doc. 101.)

On September 20, 2019, it was recommended that the motion for Rule 11 sanctions be granted as to the request for a reprimand and warning to Plaintiff on future sanctions and denied as to the remaining relief requested. (*See* doc. 109 at 13.) The order dated October 29, 2019, accepted the recommendation, stating, in relevant part:

> Plaintiff is *reprimanded and strongly warned* that *future litigation against Defendants or any of their agents or employees arising out of the same facts underlying this case will result in the imposition of more severe sanctions*, which may include monetary and injunctive sanctions and/or an additional bar preventing Plaintiff from filing any civil action in federal court without obtaining prior judicial authorization.

(*See* doc. 136 (emphasis added).)

Also on September 20, 2019, it was separately recommended that the motion to dismiss be granted, and that Plaintiff's claims under the STAA be dismissed without prejudice for lack of subject-matter jurisdiction, any claim asserted under the cat's paw theory of liability be *sua sponte* dismissed with prejudice for failure to state a claim, and all of his remaining claims be dismissed with prejudice for failure to state a claim. (*See* doc. 108 at 46.) Over Plaintiff's objections, the recommendation was adopted, and Plaintiff's claims were dismissed by judgment dated October 29, 2019. (*See* docs. 120, 122-25, 137, 139.) Plaintiff appealed the judgment, but his appeal was dismissed by the Fifth Circuit for want of prosecution on December 18, 2019. *See Budri v. FirstFleet, Inc.*, No. 19-11203, 2019 WL 8645418, at *1 (5th Cir. Dec. 18, 2019).

On November 13, 2019, Plaintiff filed a motion seeking to alter or amend the judgment under Rule 59 of the Federal Rules of Civil Procedure. (*See* doc. 154.) Defendant responded on December 3, 2019, and Plaintiff replied on December 5, 2019. (*See* docs. 156, 159.) The motion was denied on December 3, 2020, and Plaintiff immediately appealed the decision to the Fifth Circuit that same day. (docs. 187-88.)

On February 7, 2020, while the motion to alter or amend was pending, Plaintiff filed a fourth administrative complaint with OSHA alleging violations of the STAA based on the June 12, 2017 employment reference. (*See* doc. *166* at 5.) After OSHA dismissed the complaint, it was referred to an ALJ for a hearing who ordered Plaintiff to file a detailed Bill of Particulars. (*Id.* at 5-6.) On April 16, 2020, Plaintiff filed a Bill of Particulars that appears to assert the same allegations as the prior proceedings, including "new and additional adverse employment actions" against him. (doc. 166 at 16.) The ALJ dismissed the fourth administrative complaint for failure to state a claim upon which relief could be granted, and the DOL's ARB denied his petition for review on June 30, 2020. *See Budri v. Firstfleet, Inc.*, No. 2020-0037, 2020 WL 3892150, at *2 (U.S. Dep't of Labor Admin. Rev. Bd. June 30, 2020).

On April 20, 2020, Defendants filed a motion requesting that Plaintiff be ordered to show cause to show cause why he should not be held in contempt of court or sanctioned for filing the fourth administrative complaint. (doc. 165.) The Court entered the following order the same day:

> The defendants shall file a *brief containing citations to relevant authorities* no later than **May 4, 2020**, specifically addressing whether and how filing the administrative action violates the order regarding "future litigation" and warning regarding a potential bar on filing "any civil action in federal court" in the October 29, 2019 order. (*See* doc. 136.) The brief shall also specifically address whether a United States District Court has the authority to prohibit a litigant from filing any administrative action. In the alternative, the defendants may withdraw their motion by that date.

(doc. 167 (formatting original and footnote omitted).) On May 4, 2020, Defendants filed their supplemental brief in support of the motion for order to show cause; Plaintiff responded on May 11, 2020. (docs. 168, 171.)

On May 30, 2020, Plaintiff emailed Defendants' counsel explaining why "there is a possibility for a new transfer [ ] from the fourth administrative action to the District Court Dallas

8

Division in three months." (doc. 172 at 15.) On June 5, 2020, Plaintiff moved for judicial notice of the fourth administrative complaint in his appeal pending before the Fifth Circuit. (*Id.* at 19-50.) On June 8, 2020, Defendants filed their reply and included these documents as exhibits. (*See* doc. 172.) On June 10, 2020, the Court granted Plaintiff leave to file a sur-reply in response, which was filed the same day. (docs. 176, 177.)

## II. CIVIL CONTEMPT[7]

Defendants argue that Plaintiff violated the order entered on October 29, 2019, when he filed the fourth administrative complaint, and seek an order for Plaintiff to show cause on why he should not be held in civil contempt. (docs. 165 at 1; 168 at 6.)

"A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909 (5th Cir. 1987) (citing *Sec. and Exch. Comm'n v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)). "A contempt order is civil in nature if the purpose of the order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions." *Lyn-Lea Travel Corp. v. Am.*

---

[7] Even though final judgment has been entered in this case, the Court retains jurisdiction to consider the requests for civil contempt and for sanctions. It is well-settled law that district courts maintain continuing jurisdiction to modify or enforce injunctions and to enforce judgments through contempt proceedings. *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir. 1987); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Enforcement ... through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order."). Additionally, the Fifth Circuit has found that the collateral jurisdiction doctrine permits courts to impose sanctions even after a final judgment on the underlying merits has been entered. *See Ratliff v. Stewart,* 508 F.3d 225, 229-30 (5th Cir. 2007); *see also Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) (a court retains jurisdiction to impose sanctions and award attorney's fees after an action is dismissed and it no longer has power to consider the merits). Indeed, "a district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of a case." *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 637-38 (5th Cir. 2008).

*Airlines, Inc.*, 283 F.3d 282, 290-91 (5th Cir. 2002).  To show that civil contempt is warranted, a moving party must establish "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992).  Intent is not an element of civil contempt; the issue is whether the alleged contemnor has complied with the court's order. *Whitfield*, 832 F.2d at 913.  The standard of proof is clear and convincing evidence, which is "'that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case.'"  *Travelhost Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).  "The judicial contempt power is a potent weapon" that should not be used unless a specific aspect of the court' order has been "clearly violated."  *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's*, 177 F.3d 380, 383 (5th Cir. 1999).

Here, Defendants present evidence that Plaintiff filed a fourth administrative complaint with OSHA alleging STAA violations based on the same underlying facts as in this case. (*See* docs. 166, 169.)  They also provide a May 30, 2020 email from Plaintiff stating his reasons why the fourth administrative complaint might be transferred to the Northern District of Texas. (*See* doc. 172 at 14-15.)[8]  As discussed, the Court entered an order that "reprimanded and strongly

---

[8] Without seeking leave of court, Defendants included exhibits with their reply that were not initially filed with their motion. (*See* doc. 172 at 9-50.) The Local Civil Rules for the Northern District of Texas do not permit the filing of evidence in support of a reply. *See* L.R. 7.1(f) (permitting the filing of a reply brief). A movant is not ordinarily permitted to introduce new evidence in support of a reply because such action deprives the non-movant of a meaningful opportunity to respond. *See Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-240 (N.D. Tex. 1991). Nevertheless, because Plaintiff sought and obtained leave to file a sur-reply to respond to these exhibits, they are considered. (*See* docs. 176, 177); *see also Springs Industries, Inc.*, 137 F.R.D. at 240 ("[W]here a

warned" Plaintiff that "*future litigation* against Defendants or any of their agents or employees arising out of the same facts underlying this case will result in the imposition of more severe sanctions." (*See* doc. 136 (emphasis added)).  The order does not contain language that expressly restricts Plaintiff from "future litigation;" it warns him of "the imposition of more severe sanctions" for such conduct. (*See* doc. 136.)  Defendants have failed to show that this order generally prohibits Plaintiff from filing administrative complaints, or that the fourth administrative complaint violates a court order.  *See Piggly Wiggly Clarksville, Inc.*, 177 F.3d at 383 (finding district court properly refused to hold plaintiffs in civil contempt where movant failed to show the specific aspect of an order that they clearly violated).  Even if "future litigation" is a violation of this order, Defendants do not demonstrate that this term includes administrative actions.  They also offer no argument or authority regarding whether a federal district court can hold a litigant in contempt of court for filing an administrative action, particularly when, as here, the filing is not disrupting the case before the court.  Because Defendants cannot establish the elements for civil contempt against Plaintiff, their motion for order to show cause on civil contempt should be denied.  *See Martin*, 959 F.2d at 47.

### III. SANCTIONS

Defendants contend that the Court has the inherent power to sanction Plaintiff for filing the fourth administrative complaint and request an order for him to show cause as to why he should not face monetary sanctions. (doc. 165 at 4.)

Courts possess the inherent power "to protect the efficient and orderly administration of

---

movant has injected new evidentiary materials in a reply without affording the non-movant an opportunity for further response, the court [ ] retains the discretion to decline to consider them.").

justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id*. "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions" *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (citations omitted). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "[T]he threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir.1995). A court's inherent power is not "a broad reservoir of power, ready at the imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir.1990), *aff'd sub nom. Chambers*, 501 U.S. at 32.

  Before imposing sanctions against a party under its inherent power, the court must make a specific finding that the party acted in bad faith. *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014) (citing *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (citation omitted)). Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Turfgrass Grp., Inc. v. Ne. Louisiana Turf Farms, LLC*, No. CIV.A. 10-1354, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)). Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay. *See Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988). The court's finding of bad faith "must be supported by

clear and convincing proof," which is a "high standard" that requires "more than a preponderance of the evidence." *See Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001) (citing *In re: Medrano*, 956 F.2d 101, 102 (5th Cir. 1992). The evidence supporting a finding of bad faith "must be so direct and weighty as to leave the factfinder with a firm belief in the truth of the facts of the case." *See id.* "Courts have the authority to make credibility determinations to resolve whether such misconduct has occurred." *United States v. Fisch*, No. CR H-11-722, 2018 WL 2335743, at *4-5 (S.D. Tex. May 23, 2018) (citing *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 808-09 (5th Cir. 2003)).

Here, Defendants argue that sanctions against Plaintiff are warranted for his fourth administrative complaint because it violates the Court's order "to curb all 'future litigation' after [his] ongoing frivolous and vexatious litigation." (doc. 168 at 3.) They contend that this Court has the inherent power to sanction Plaintiff for filing his OSHA complaint, "regardless of the forum in which the conduct occurs," relying on *Chambers v. NASCO* in support. (*Id.*) In *Chambers*, the district court entered orders that enjoined the defendant from selling or otherwise encumbering a television station that was the subject of an action for specific performance of a contract. *See Chambers*, 501 U.S. at 35. While the lawsuit was pending, the defendant submitted an application to the Federal Communications Commission (FCC) for a new transmission license and for permission to move equipment from the television station, and also filed an administrative objection with the FCC to the plaintiff's pending transfer application. The district court determined that the filings to the FCC violated its injunctions and subsequently used its inherent power to impose sanctions in the form of attorney's fees and expenses. *Id.* at 39. Affirming the sanctions, the Supreme Court held that it was within the scope of the district court's power to

impose sanctions for conduct before other tribunals that "was in direct contravention of the District Court's orders to maintain the status quo pending the outcome of the litigation." *Id.* at 57.

In contrast to *Chambers*, Plaintiff's fourth administrative complaint was not "in direct contravention of the District Court's orders." *See id.* As discussed, Defendants fail to demonstrate how the OSHA complaint violated the October 29, 2020 order. Notably, Defendants provide no legal authority or precedent giving a federal district court authority to prohibit a litigant from filing an administrative action. While "*Chambers* expressly upheld the court's inherent power to police *itself*, thus serving the ... purpose of vindicat[ing] judicial authority," it "did not grant a district court the power to police the administrative courts [ ] when those courts do not threaten the court's own judicial authority or proceedings." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 593 (5th Cir. 2008) (quotations omitted and emphasis and alterations in original). As emphasized by the Fifth Circuit, "[t]he purpose of a court's sanctioning power is to enable it to ensure its own proper functioning." *Conner v. Travis Cty.*, 209 F.3d 794, 800 (5th Cir. 2000); *see Portillo v. Cunningham*, 872 F.3d 728, 740 fn.29 (5th Cir. 2017) (noting that the Fifth Circuit "has repeatedly vacated sanctions that punish conduct that did not occur in front of the district court"); *see, e.g., Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010) (holding the district court lacked inherent authority to sanction an attorney for misconduct that occurred in arbitration because it was not before the district court and not in direct defiance of its orders); *but see In re Skyport Glob. Commc'n, Inc.*, 642 F. App'x 301, 303-04 (5th Cir. 2016) (holding the bankruptcy court did not abuse its discretion in assessing sanctions for a petition filed in state court that had "directly contravene[d] the [bankruptcy] confirmation order").

Because Plaintiff's fourth administrative complaint is "neither before the district court nor

in direct defiance of its orders, the conduct is beyond the reach of the court's inherent authority to sanction." *Positive Software Sols., Inc.*, 619 F.3d at 461.  Accordingly, Defendants' request for an order to show cause on sanctions should be denied.

## IV.  RECOMMENDATION

Defendants' motion should be **DENIED**.

**SO RECOMMENDED** on this 18th day of February, 2021.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE